1    **WO**

2

3

4

5

6                  **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9    Denna Rasho Hasso,                  )    No. CV-12-383-PHX-SMM
                                         )
10            Plaintiff,                  )    **MEMORANDUM OF DECISION AND**
                                         )                **ORDER**
11   v.                                   )
                                         )
12   Carolyn W. Colvin, Commissioner of )
     Social Security Administration,      )
13                                        )
              Defendant.                  )
14                                        )
                                         )
15   _____ )

16          Plaintiff Denna Hasso seeks judicial review under 42 U.S.C. § 405(g) of the final

17   decision of the Commissioner of Social Security ("Commissioner"), which denied her

18   disability insurance benefits under the Social Security Act.  (Doc. 1.)[1]  Plaintiff asks this

19   Court to vacate the Commissioner's denial.  (Doc. 17.)  Defendant has responded, Plaintiff

20   has replied, and the matter is fully briefed.  (Doc. 18; Doc. 19.)  After reviewing the briefs,

21   and having determined that oral argument is unnecessary,[2] the Court finds that the

22   Commissioner's decision is supported by substantial evidence and free from harmful legal

23

24          [1] "Doc." refers to the documents in this Court's file.  "Tr." refers to the administrative

25   transcript.  A certified copy of the administrative transcript was provided to this Court by the
     Commissioner of the Social Security Administration on May 1, 2012.  (See Doc. 9.)

26

27          [2] Plaintiff's request for oral argument is denied because the parties have had an
     adequate opportunity to present their written arguments, and oral argument will not aid the

28   Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d
     724, 729 (9th Cir. 1991).

1  error.  The Court will thus affirm the decision of the Commissioner.

2  **BACKGROUND**

3  Plaintiff was born on February 22, 1964.  (Tr. 20.)  She has at least a high school

4  education and is able to communicate in English.  (Id.)  Plaintiff injured her spine while

5  lifting boxes in a workplace accident in April of 2008.  (Doc. 17 at 3.)  Plaintiff eventually

6  received worker's compensation benefits as a result of this injury.  (Tr. 35.)  On September

7  26, 2007, a brain scan documented the presence of a meningioma: a benign, slow growing

8  tumor in the membranes of Plaintiff's brain.  (Doc. 17 at 3.)  On July 30, 2010, Plaintiff

9  underwent brain surgery for the tumor.  (Id. at 6.)

10  Plaintiff filed an application for Social Security disability insurance benefits on July

11  25, 2009.  (Tr. 9.)  In her application, she alleged that she became disabled as of April 8,

12  2008, though this date was later amended to November 1, 2008 (otherwise referred to as

13  "disability onset date").  (Id.)  Plaintiff has acquired sufficient quarters of coverage under

14  the Social Security Act to remain insured through December 31, 2013.  (Id.)

15  When applying for disability, Plaintiff alleged inability to work due to the back injury

16  and the effects of the brain tumor.  (Id. at 14.)  She alleged a variety of resulting symptoms,

17  including chronic neck and back pain, severe headaches, blurred vision, inability to

18  concentrate, memory loss, nausea, anxiety, auditory hallucinations, agoraphobia, and severe

19  depression.  (Id.)

20  Plaintiff's application was denied initially on July 13, 2010, and upon reconsideration

21  on July 13, 2010.  (Id. at 9.)  Plaintiff sought a hearing before an administrative law judge

22  ("ALJ"), and the hearing was held on May 5, 2011.  (Id.)  On May 20, 2011, the ALJ

23  determined that Plaintiff was not disabled for the purpose of receiving disability insurance

24  benefits.  (Id. at 20.)  This decision became the Commissioner's final decision when the

25  Social Security Appeals Council denied review. (Id. at 1-3.)

26  **STANDARD OF REVIEW**

27  When reviewing a Social Security appeal, the Commissioner's decision must be

28  affirmed if it is supported by substantial evidence and he applied the correct legal standards.

1   See Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004);

2   Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003). When reviewing the

3   Commissioner's factual determinations, acting through the ALJ, this Court will affirm if

4   there is substantial evidence supporting those determinations. See Celaya v. Halter, 332 F.3d

5   1177, 1180 (9th Cir. 2003); Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).

6       Substantial evidence is more than a mere scintilla, but less than a preponderance. See

7   Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003); Mayes v. Massanari,

8   276 F.3d 453, 459 (9th Cir. 2001).  Substantial evidence is relevant evidence which a

9   reasonable person might accept as adequate to support a conclusion based on the entire

10  record.  Howard, 341 F.3d at 1011; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,

11  599 (9th Cir. 1999).

12      If the evidence can reasonably support either affirming or reversing the

13  Commissioner's conclusion, the Court may not substitute its judgment for that of the

14  Commissioner. See Batson, 359 F.3d at 1193; McCartey v. Massanari, 298 F.3d 1072, 1075

15  (9th Cir. 2002).  The ALJ is responsible for determining credibility, resolving conflicts in

16  medical testimony, and for resolving ambiguities.  See Benton, 331 F.3d at 1040; Edlund v.

17  Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  The ALJ's legal determinations are

18  reviewed *de novo*, although deference is owed to a reasonable construction of the applicable

19  statutes.  See Edlund, 253 F.3d at 1156; McNatt v. Apfel, 201 F.3d 1084, 1087 (9th Cir.

20  2000).

21              **COMMISSIONER'S DISABILITY EVALUATION PROCESS**

22      To qualify for Social Security disability benefits, Plaintiff must show that she suffers

23  from a "medically determinable physical or mental impairment" that prevents her from

24  performing her prior work activities and any other substantial gainful employment that exists

25  in the national economy, and that the impairment "can be expected to result in death or which

26  has lasted or can be expected to last for a continuous period of not less than 12 months." See

27  42 U.S.C. § 423(d)(1)(A).  Further, Plaintiff's disabled status must have existed on or before

28  her date last insured.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Tidwill v.

1  Apfel, 161 F.3d 599, 601 (9th Cir. 1998); Flaten v. Sec'y of Health & Human Servs., 44 F.3d

2  1453, 1459 (9th Cir. 1995).

3          Social Security regulations prescribe a five-step evaluation process for an ALJ to

4  determine if a claimant is disabled within the meaning of the Social Security Act. See

5  Batson, 359 F.3d at 1190, 1194; 20 C.F.R. § 404.1520. At step one, the ALJ determines if

6  the claimant is presently engaged in substantial gainful activity. See 20 C.F.R. §

7  404.1520(b). If the claimant is engaged in substantial gainful activity, then he is not disabled.

8  If not, the ALJ moves to step two to determine if the claimant has impairments or a

9  combination of impairments that significantly limit the claimant's physical or mental ability

10  to do basic work activities and are thus "severe" within the meaning of the regulation. See

11  id. § 404.1520(c).

12          At the third step, the ALJ evaluates if the claimant's impairment meets or medically

13  equals the criteria of a listed impairment found in Appendix 1 of Subpart P of Regulation

14  No. 404.  If yes, and the impairment meets the requirements for duration under 20 C.F.R. §

15  404.1509, the claimant is disabled.  If the claimant fails to meet or equal the criteria or fails

16  the duration requirement, the ALJ's analysis moves to step four.  See 20 C.F.R. §

17  404.1520(e).

18          Under step four, the ALJ determines the claimant's residual functional capacity

19  ("RFC"), which is the continued ability of the claimant to perform physical or mental work

20  activities despite his impairment or combination of impairments.[3] See id.  The ALJ also

21  determines if the claimant's RFC allows him to perform past relevant work.  See id. §

22  404.1520(f).  If yes, the claimant is not disabled.  If not, the analysis proceeds to a fifth step

23  where the burden shifts to the Commissioner to demonstrate that the claimant is not disabled

24  by presenting evidence that the claimant retains sufficient RFC to adjust to perform other

25  jobs that exist in significant numbers either in the region where the claimant lives or in

26

27          [3]Mental limitations, nonexertional capacity, considers all work-related limitations and
    restrictions that do not depend on an individual's physical strength, such as difficulties in
28  concentration.  SSR 96-8p.

- 4 -

1   several regions of the country.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g).

2   In determining whether Plaintiff was disabled from her disability onset date,

3   November 8, 2008, the ALJ moved through steps one and two without finding that Plaintiff

4   was disabled, but finding that she had the following severe impairments: depression, anxiety,

5   chronic neck and back pain, and degenerative disc disease of the lumbosacral spine.  (Tr.

6   11.)  The ALJ found that Plaintiff's meningioma, however, was non-severe.  (Id.)  Between

7   steps three and four, the ALJ evaluated Plaintiff's RFC and found that she was limited to a

8   range of light work.  (Id. at 13.)  Based on Plaintiff's RFC assessment, at step four the ALJ

9   found that Plaintiff could not perform her past relevant work due to her impairments.  (Id.

10  at 19-20.)  However, the ALJ found at step five that Plaintiff retained sufficient RFC to

11  adjust to perform other jobs existing in significant numbers in the national economy.  See

12  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(g).  (Id. at 20-21.)

## DISCUSSION

### A.  Plaintiff's Meningioma

15  Plaintiff argues that the ALJ erred in finding that her meningioma was not a severe

16  impairment at Step Two of the sequential evaluation process.  (Doc. 17 at 26.)  According

17  to Plaintiff, the evidence showed the existence of an abnormality sufficient to have at least

18  a minimal effect on her ability to work, and thus the ALJ should have found that the residual

19  effects of her meningioma operation constituted a severe impairment.  (Id.)  The ALJ found

20  that this was not a severe impairment because Plaintiff successfully underwent surgery of

21  the benign tumor in July of 2012, and post-operative evaluation revealed no complications

22  or acute distress, nor any abnormalities in eye movement, sensation, or muscle strength.  (Tr.

23  11-12.)  A complete neurological exam of Plaintiff's mental status, cranial nerves, motor,

24  sensory, and cerebellar systems was then conducted in October 2010, and results were

25  normal.  (Id. at 12.)  Accordingly, the ALJ found that the objective evidence of record, and

26  the lack of any evidence of worsening or deterioration related to the operation led to the

27  conclusion that this impairment was non-severe.  (Id.)

28  The step-two inquiry is a *de minimis* screening device used to dispose of groundless

1 claims. See Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987). An impairment or

2 combination of impairments can be found "not severe" only if the medical evidence clearly

3 establishes a slight abnormality that has "no more than a minimal effect on an individual's

4 ability to work." SSR 85-28, 1985 WL 56856 at *3 (1985); see also Webb v. Barnhart, 433

5 F.3d 683, 686 (9th Cir. 2005); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996);

6 Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

7 Here, the Court finds that the ALJ correctly reviewed the medical evidence and

8 properly concluded that the residual effects Plaintiff's meningioma operation did not have

9 more than a minimal effect on her ability to work, and thus was not a severe impairment.

10 **B. Step Five of the Sequential Evaluation Process**

11 At the fifth step, the burden shifts to the Social Security Administration to

12 demonstrate that the claimant is not disabled and that he can engage in some type of

13 substantial gainful activity that exists in "significant numbers" in the national economy. The

14 ALJ considers the fact that the claimant cannot do the work that he has done in the past

15 because of a severe impairment, considers the claimant's RFC, the claimant's age, education,

16 and work experience, and determines whether the claimant can do any other work in the

17 national economy. The ALJ will find the claimant disabled if the claimant is unable to adjust

18 to any other work. See 20 C.F.R. §§ 404.1520(g), 416.920(g). See also Lockwood v.

19 Comm'r of Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010) (where claimant

20 establishes that she suffers from a severe impairment that prevents her from doing past work,

21 burden shifts to the Commissioner to show that she can perform some other work); Valentine

22 v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009) (the burden shifts to

23 Commissioner at step five to show the claimant can do other kinds of work).

24 The step five analysis includes a detailed assessment of the medical evidence, the

25 claimant's daily activities, prior work record, any functional restrictions and limitations,

26 medication and other treatment for relief of symptoms, and information and observations by

27 treating and examining physicians and third parties regarding the nature and extent of the

28 claimant's symptoms. See 20 C.F.R. §§ 404.1529, 416.929. Credibility determinations are

1   the province of the ALJ; however, the ALJ must make specific findings which support a

2   conclusion that the claimant's allegations of severity are not credible.  See Lingenfelter v.

3   Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Robbins v. Soc. Sec. Admin., 466 F.3d 880,

4   883 (9th Cir. 2006).

5          **C.  ALJ Rationale**

6          The ALJ rejected Plaintiff's subjective symptom testimony, finding it not credible.

7   (Tr. 14-17.)  The ALJ also found conflicting opinion evidence in this case.  (Id. at 17-19.)

8   The ALJ weighed the conflicting opinions and concluded that Plaintiff was not disabled.

9   (Id.)  The ALJ found that although Plaintiff could not return to her past relevant work, she

10  maintained a sufficient RFC to perform other jobs existing in significant numbers in the

11  national economy.  (Tr. 20-21.)

12         **1.  Plaintiff's Subjective Symptom Testimony**

13         Plaintiff contends that the ALJ improperly refused to credit her testimony about the

14  severity of her subjective symptoms.  (Doc. 17 at 19-26.)

15         "Pain of sufficient severity caused by a medically diagnosed 'anatomical,

16  physiological, or psychological abnormality' may provide the basis for determining that a

17  claimant is disabled."  Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (quoting

18  42 U.S.C. § 423(d)(5)(A) (2006)).  "Once a claimant produces objective medical evidence

19  of an underlying impairment, an ALJ may not reject a claimant's subjective complaints

20  based solely on [the] lack of objective medical evidence to fully corroborate the alleged

21  severity of [those symptoms]."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

22  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he

23  or she may only find [the claimant] not credible by making specific findings as to credibility

24  and stating clear and convincing reasons for each."  Robbins v. Soc. Sec. Admin., 466 F.3d

25  880, 883 (9th Cir. 2006).  Specifically:

26         The ALJ may consider at least the following factors when weighing the
       claimant's credibility: [the] claimant's reputation for truthfulness,
27     inconsistencies either in [the] claimant's testimony or between her testimony
       and her conduct, [the] claimant's daily activities, her work record, and
28     testimony from physicians and third parties concerning the nature, severity,

1    and effect of the symptoms of which [the] claimant complains.

2    Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (internal quotations omitted).  The

3    ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did

4    not arbitrarily discredit [the] claimant's testimony." Id. at 958.

5         Plaintiff alleged that she suffered from migraine headaches, blurred vision,

6    concentration problems, memory loss, nausea, agoraphobia, aural hallucinations, anxiety,

7    and depression.  (Tr. 14.)  She alleged further that due to her back injury she cannot sit,

8    stand, or lay down for long periods without taking pain medications.  (Id.)

9         The ALJ acknowledged that Plaintiff's medically determinable impairments "could

10   reasonably be expected to cause the alleged symptoms," but concluded that her "statements

11   concerning the intensity, persistence and limiting effects of these symptoms" were not

12   credible.  (Id.)  The ALJ found that Plaintiff's subjective symptom testimony was not

13   supported by the evidence as a whole, being generally inconsistent and unsupported by

14   objective findings, Plaintiff's activities of daily living, her treatment history, and the

15   effectiveness of medications and treatment indicated in the record.  (Id.)

16        The ALJ found that Plaintiff's subjective symptom testimony was generally

17   inconsistent.  (Id. at 16.)  The record reflected that on numerous occasions Plaintiff failed

18   to mention to doctors any pain or symptoms associated with joint or musculoskeletal pain.

19   (Id.)  The ALJ observed also that objective findings did not support Plaintiff's subjective

20   testimony.  (Id.)  The ALJ noted that the objective medical diagnostic record "contained no

21   documentation of any clinical signs (e.g. muscle atrophy, unilateral reflex abnormality) of

22   nerve root impingement or other spinal pathology that could produce disabling pain,"

23   concluding that "[f]rankly, there is simply no evidence of a medical impairment which could

24   be expected to cause the alleged severity of the claimant's symptoms and limitations."  (Id.)

25        At the hearing, Plaintiff testified that she can prepare simple meals, does dusting and

26   laundry, visits with family, pays on-line bills, goes shopping, cares for her dog, and watches

27   television.  (Id. at 15.)  The ALJ found that Plaintiff's daily activities showed that she had

28   the ability to sustain some level of activity if motivated to do so, suggesting that she had

- 8 -

1  better physical and mental capacities than her subjective testimony indicated.  (Id.)

2  The ALJ also took into account the fact that Plaintiff had been prescribed and took

3  appropriate medications for pain management, which appeared to have generally been

4  effective in controlling her symptoms.  (Id.)  Moreover, the ALJ noted that Plaintiff had

5  never sought or received treatment from a mental health specialist, and had stopped taking

6  anti-depression medications despite allegations of worsening depression.  (Id.)  These factors

7  led the ALJ to conclude that Plaintiff's testimony of subjective mental symptoms and

8  limitations was not fully credible.  (Id.)

9  The ALJ also observed that Plaintiff's work history similarly cast doubt upon her

10  claim of disabling symptoms, in that Plaintiff continued to work after her original alleged

11  onset date, and she held herself out as ready, willing, and able to work.  (Id.)  Indeed,

12  Plaintiff testified at the hearing that she was willing to try to work, suggesting that she did

13  not herself believe that her impairments were completely debilitating.  (Id. at 16.)

14  Finally, and most significantly, the ALJ was "convinced" that Plaintiff's testimony

15  was not fully credible because "there was exaggeration and symptom magnification for

16  financial gain."  (Id.)  The ALJ noted that all of Plaintiff's basic needs were met with

17  unemployment benefits, and that she evinced little motivation for attempting to work if it

18  would result in loss of those benefits.  (Id.)  The ALJ emphasized also that evidence showed

19  that Plaintiff's treating doctor "returned her to work with light restrictions and did not

20  consider [her] incapable of gainful employment" and informed Plaintiff that he would not

21  recommend that she be put on total disability – whereupon Plaintiff "requested to be referred

22  to another doctor who would recommend total disability."  (Id.)

23  Upon review, the Court finds that the ALJ's findings are "sufficiently specific to

24  permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."

25  Thomas, 278 F.3d at 958.  The ALJ gave specific and substantial reasons for his

26  determination that Plaintiff's subjective symptom testimony was not credible, especially that

27  the ALJ found evidence of malingering and explicitly found that Plaintiff's subjective claims

28  were exaggerated for financial gain.  (Tr. 45.)  It is not the role of this Court to second-guess

1  the ALJ's determination.  Thus, the ALJ did not err in the manner in which he discounted

2  Plaintiff's subjective complaint testimony.

3  **2. Opinion Evidence**

4  Plaintiff argues that the ALJ decision is based on reversible legal error and does not

5  rest upon substantial evidence.  Specifically, she argues that the ALJ erred by: (1) rejecting

6  the opinion of her treating physician, Dr. Louis Cerato, who concluded that she was unable

7  to work; and (2) assigning improper weight to the opinions of non-treating and non-

8  examining state agency physicians who opined that she had only moderate physical

9  limitations and was able to work. (Doc. 17 at 15-19.)

10  In weighing medical source opinions in Social Security cases, the Ninth Circuit

11  distinguishes among three types of physicians: (1) treating physicians, who actually treat the

12  claimant; (2) examining physicians, who examine but do not treat the claimant; and (3)

13  non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater,

14  81 F.3d 821, 830 (9th Cir. 1995).

15  Generally, more weight is given to the opinion of a treating physician than to the

16  opinions of non-treating physicians because a treating physician is employed to cure and has

17  a greater opportunity to know and observe the patient as an individual.  See Andrews v.

18  Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995).  Where a treating physician's opinion is not

19  contradicted by another physician, it may be rejected only for "clear and convincing"

20  reasons, and where it is contradicted, it may not be rejected without "specific and legitimate

21  reasons" supported by substantial evidence in the record.  Lester, 81 F.3d at 830.  "When an

22  examining physician relies on the same clinical findings as a treating physician, but differs

23  only in his or her conclusions, the conclusions of the examining physician are not

24  'substantial evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

25  An ALJ must accord "controlling weight" to a treating doctor's opinion where

26  medically-approved diagnostic techniques support the opinion and the opinion is not

27  inconsistent with other substantial evidence.  See 20 C.F.R. § 404.1527(d)(2); Lingenfelter

28  v. Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007); Orn, 495 F.3d at 632-33.  If the ALJ

- 10 -

1   does not accord the opinion controlling weight, then the ALJ must look to a number of other

2   factors in determining how much weight to give it, such as the length of the treatment

3   relationship, frequency of examination, nature and extent of treatment relationship, evidence

4   supporting the treating doctor's opinion, consistency of the opinion, and the doctor's

5   specialization. See 20 C.F.R. § 404.1527(d)(2)-(d)(6).

6      Similarly, the Ninth Circuit generally holds that greater weight is to be given to the

7   opinion of an examining physician over and above the opinion of a non-examining

8   physician. See Andrews, 53 F.3d at 1041. As with a treating physician, the ALJ may reject

9   the opinion of an examining physician, even if contradicted by a non-examining physician,

10   only by providing specific, legitimate reasons that are supported by substantial evidence in

11   the record. See Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).

12      It is solely the duty of the ALJ to weigh the evidence and resolve conflicts in the

13   record. See Edlund, 253 F.3d at 1156. An ALJ need not accept the opinion of any

14   physician, including a treating physician, if that opinion is brief, conclusory, and

15   inadequately supported by clinical findings. See Thomas v. Barnhart, 278 F.3d 947, 957

16   (9th Cir. 2002). However, "an ALJ does not provide clear and convincing reasons for

17   rejecting an examining physician's opinion by questioning the credibility of the patient's

18   complaints where the doctor does not discredit those complaints and supports his ultimate

19   opinion with his own observations." Ryan v. Comm'r of Soc. Sec. Admin., 528 F.3d 1194,

20   1199-1200 (9th Cir. 2008).

21      Treating Physician Dr. Louis Cerato

22      Dr. Cerato was Plaintiff's treating physician, and submitted a medical assessment and

23   pain residual functional capacity assessment in February of 2011. (Tr. 18.) Therein, Dr.

24   Cerato listed Plaintiff's impairments as including: "lumbar thoracic, cervical pain, shooting

25   pains in head, depression/anxiety, and meningioma with headaches," and opined that she was

26   limited to "less than sedentary" exertional levels, with "lifting/carry less than 10 pounds,

27   standing/walking less than 2 hours, and sitting for less than 2 hours in an 8-hour workday."

28   (Id.)

1    The ALJ decision gave "minimal weight" to this opinion, finding that the Doctor's

2  opinions were inconsistent with the greater medical evidence of record and Plaintiff's

3  activities of daily living, unsupported by treating records, and appeared to be based heavily

4  on Plaintiff's subjective reports of her symptoms and limitations, which the ALJ had already

5  noted were subject to considerable suspicion due to Plaintiff's exaggeration for financial

6  benefit. (Id. at 18-19.)  The issue before the Court is whether the ALJ provided specific and

7  legitimate reasons supported by substantial evidence in the record for rejecting Dr. Cerato's

8  opinion.  See Lester, 81 F.3d at 830 (stating that a treating physician's opinion may not be

9  rejected without "specific and legitimate reasons" supported by substantial evidence in the

10 record).  Plaintiff argues that the ALJ erred in not according full weight to the doctor's

11 opinion, disagreeing with the ALJ's contention that the opinion lacks the support of

12 objective clinical or laboratory diagnostic findings.  (Doc. 17 at 15-16.)

13   Here, the Court disagrees with Plaintiff that the ALJ failed to provide specific and

14 legitimate reasons supported by substantial evidence in the record for rejecting Dr. Cerato's

15 opinion.  The ALJ discounted this treating physician's opinion primarily because the ALJ

16 found that the doctor's notes mainly summarized Plaintiff's subjective complaints,

17 diagnoses, and medications – and as discussed previously, the ALJ set forth specific, clear

18 and convincing reasons for discounting Plaintiff's subjective symptom testimony.  Indeed,

19 the ALJ cited evidence that Plaintiff's treating physician himself discredited Plaintiff's

20 complaints by refusing to recommend total disability.  (Tr. 45.)  Thus, the ALJ provided

21 specific and legitimate reasons supported by substantial evidence in the record for

22 discounting the doctor's opinion.

23   In contrast to the opinions of Dr. Cerato, the ALJ accorded "significant weight" to the

24 opinions of the State agency's reviewing physicians and psychologists, who completed RFC

25 assessments.  (Tr. 19.)  These physicians stated that Plaintiff was capable of performing "a

26 range of light-exertional work with occasional climbing ramps/stairs, stooping, kneeling,

27 crouching, and crawling; no climbing of ladders, ropes, scaffolds; frequently balancing; with

28 some environmental restrictions, and limited to simple, repetitive work with little stress and

1   occasional interaction with public." (Id.) The ALJ stated that he relied on these non-

2   examining doctors' opinions because they were "soundly based on the objective findings,

3   progress notes and treating notes" and were "generally consistent with the consultative

4   examining physicians and with the overall medical evidence of record as a whole." (Id.)

5        The Court disagrees with Plaintiff that the ALJ improperly accorded more weight to

6   the State agency doctors' opinions. As discussed above, the ALJ explicitly discussed his

7   rejection of the treating physician's opinions, and set forth specific, supported reasons for

8   instead crediting the opinions of the non-examining state agency physicians. See Nguyen

9   v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996). Thus, the ALJ's final decision that Plaintiff

10  was not disabled under the Social Security Act is supported by substantial evidence and

11  based on the correct legal standards.

**CONCLUSION**

13       Accordingly, for the foregoing reasons,

14       **IT IS HEREBY ORDERED affirming** the decision denying disability benefits.

15       **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in

16  favor of Defendant and terminate this action.

17       DATED this 26th day of April, 2013.

19  _____

20  Stephen M. McNamee
    Senior United States District Judge

21

22

23

24

25

26

27

28